COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Benton and
          Senior Judge Duff
Argued at Alexandria, Virginia


LEROY DORSEY
                                    OPINION BY
v.   Record No. 1543-98-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                    APRIL 4, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                 Benjamin N. A. Kendrick, Judge

          Mark A. Rothe for appellant.

          H. Elizabeth Shaffer, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Leroy Dorsey (appellant) was convicted in a jury trial of

robbery, in violation of Code § 18.2-58, and the use of a

firearm in the commission of robbery, in violation of Code

§ 18.2-53.1.  On appeal, he contends that:  (1) his conviction

violated the Double Jeopardy Clause of the United States

Constitution; (2) he was denied due process when the trial court

revoked his bail; (3) the trial court erroneously failed to

defer to previous judicial determinations admitting him to bail;

and (4) the trial court lacked authority to order his bail

revoked.  For the following reasons, we affirm.

# I. Background

On August 7, 1997, appellant was arrested for robbing Danny Neil and later released by a magistrate on $10,000 bail, which, on August 11, 1997, was reduced to $3,000. Only one robbery charge was certified to the grand jury and appellant's bail was continued. On September 15, the grand jury, indicted appellant on the robbery charge and returned a direct indictment for using a firearm in the commission of the robbery.

On October 10, 1997, the Commonwealth filed a motion to join the trials of appellant and his codefendant, Alfred Dearing (Dearing). At the joinder hearing on October 23, 1997, the Commonwealth presented evidence that appellant had participated with Dearing in two armed robberies on or about August 7, 1997, including the one with which appellant was charged. According to Detective Paul Larson, appellant "came from Maryland to Virginia to commit a robbery with his cousin." Larson testified as follows:

> A. . . . He told us that earlier before the robbery in Arlington that they had done another robbery or had another incident. I couldn't identify exactly where. But through a report in Alexandria, an earlier robbery happened in Alexandria with the same circumstances.
>
> Q. And with respect to the robbery that occurred in Arlington, what did the defendant Mr. Dorsey tell you what [sic] happened in that robbery?
>
> A. He said that they had driven up next to the victim who was walking down Kenmore

-

Street, the 1900 block of Kenmore Street, where Mr. Dearing pointed the gun at the victim and demanded money.

The victim didn't have any, so they ended up taking a gold chain from around the victim's neck and then leaving the scene.

   *      *      *      *      *      *      *

Q.  At the time that the Arlington robbery occurred, did Mr. Dorsey tell you where he was in the car?

A.  Yes.  He said he was the driver of the car.

After argument by both parties, the trial court granted the Commonwealth's request for a joint trial.  Additionally, the trial court, sua sponte, revoked appellant's bail, explaining:

I think [appellant and Dearing] are a danger to this community.  And I am presuming them to be innocent.  The jury can find them innocent or not guilty.  But on the evidence that I heard, riding around and pointing a gun, they are a danger.  More than once in fact.

(Emphasis added).  The following week, appellant filed a "Notice and Motion to Re-Admit Defendant to Bail" and requested a hearing on the motion.  At the October 27, 1997 bail hearing, the Commonwealth noted that appellant had not been arraigned on the firearm charge for which he had been directly indicted.  The Commonwealth asked that no bail be set for that charge.  The trial court agreed, denied the motion for bail on the firearm charge, and denied the motion to re-admit appellant to bail on the robbery charge, stating:

-

> Counsel, I don't have any problem with either of the defendant's [sic] appearance in court. They're here when they're supposed to be.
>
> My problem is the danger they represent to the community. And I have ample evidence brought to my attention as a result of the [joinder] hearing that they are a danger.
>
> Now, if able counsel, and I have no doubt that they can certainly try and may be successful, can convince a jury that they didn't do it, that's fine. But that's for [defense counsel] to deal with the jury.
>
> But insofar as I'm concerned, my responsibility, in part, is to decide whether or not these two individuals represent a clear, present danger to this community. And I say they do.
>
> Now, if the jury says they're not guilty, fine. But until that happens, they're not going to be riding around out on the street, pull up to people and pulling guns and robbing. No way.

(Emphasis added).

On January 15, 1998, approximately two and one-half months after the bond hearing, appellant filed a motion to recuse the trial judge, arguing that "impartiality in this case could be called into question, given [the trial court's] statement that . . . [appellant] was a danger to the community." The trial court denied the motion to recuse, stating:

> [The motion denying bail] was made because in this Court's opinion, these two individuals represented a danger to the community. If they're acquitted, I apologize. But I'm not going to run the risk that [the defendants are] going to go

-

out and hurt somebody pending the trial.
And that's that.

At the January 15, 1998 motions hearing, appellant also filed a "Plea of Former Jeopardy," arguing that revocation of his bail violated due process and that trial on these charges violated the double jeopardy prohibition.  The trial court denied appellant's double jeopardy challenge.

Appellant appealed neither the denial of bail on the firearm charge nor the revocation of his bail on the robbery charge.  Appellant was tried by jury and convicted of robbery and the use of a firearm in the commission of the robbery.

## II.  Double Jeopardy

Appellant contends he was subjected to multiple punishments in violation of the Double Jeopardy Clause of the Fifth Amendment.  He argues that the revocation of his bail constituted "punishment" and, thus, his subsequent trial on the substantive charges was constitutionally impermissible.  We disagree.

The Fifth Amendment to the United States Constitution states that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  The Double Jeopardy Clause provides three distinct protections: "It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it

-

protects against multiple punishments for the same offense." North Carolina v. Pearce, 305 U.S. 711, 717 (1969); see Shears v. Commonwealth, 23 Va. App. 394, 400, 477 S.E.2d 309, 312 (1996). By its terms, the Double Jeopardy Clause "applies only if there has been some event . . . which terminates the original jeopardy." Richardson v. United States, 468 U.S. 317, 325 (1984). It is the third prong of this doctrine upon which appellant relies.

In Hudson v. United States, 522 U.S. 93 (1997), the United States Supreme Court explained that "the Double Jeopardy Clause does not prohibit the imposition of any additional sanction that could, in common parlance, be described as punishment." Id. at 98-99 (internal quotations and citations omitted). "The Clause protects only against the imposition of multiple criminal punishments for the same offense, and then only when such occurs in successive proceedings." Id. at 99 (citations omitted).

> Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. A court must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Even in those cases where the legislature has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect, as to transfor[m] what was clearly intended as a civil remedy into a criminal penalty.

-

<u>Id.</u> (internal quotations and citations omitted).  <u>See</u> <u>United</u>

<u>States v. Ward</u>, 448 U.S. 242, 248-49 (1980); <u>Kennedy v.</u>

<u>Mendoza-Martinez</u>, 372 U.S. 144, 168-69 (1963); <u>see</u> <u>also</u> <u>Ingram</u>

<u>v. Commonwealth</u>, 29 Va. App. 759, 763-64, 514 S.E.2d 792, 794-95

(1999).

The Court in <u>Hudson</u> outlined the following "useful

guideposts" in determining whether a punishment is criminal:

> (1) [w]hether the sanction involves an
> affirmative disability or restraint; (2)
> whether it has historically been regarded as
> a punishment; (3) whether it comes into play
> only on a finding of <u>scienter</u>; (4) whether
> its operation will promote the traditional
> aims of punishment-retribution and
> deterrence; (5) whether the behavior to
> which it applies is already a crime; (6)
> whether an alternative purpose to which it
> may rationally be connected is assignable
> for it; and (7) whether it appears excessive
> in relation to the alternative purpose
> assigned.

<u>Hudson</u>, 522 U.S. at 99 (quoting <u>Kennedy</u>, 372 U.S. at 168-69)

(internal quotations omitted).  As the Court emphasized,

however, "these factors must be considered in relation to the

statute on its face, and only the clearest proof will suffice to

override legislative intent and transform what has been

denominated a civil remedy into a criminal penalty."  <u>Id.</u> at 100

(internal quotations and citations omitted).

In the instant case, appellant contends that under the

tests enunciated in <u>Kennedy</u> and <u>Hudson</u> the revocation of his

bail served as punishment for the crimes charged, as opposed to

-

any regulatory function of the Commonwealth.  He argues that "[i]mprisonment involves an affirmative restraint and deprivation of those fundamental rights which ha[ve] been traditionally considered as punishment."  Because the trial court was not justified in revoking his bail, appellant concludes, the revocation was an impermissible punishment in violation of the Double Jeopardy Clause.

The trial court's revocation of his bail was not an adjudication of guilt on the offenses charged in the indictments, but rather was a finding of probable cause to believe that appellant's freedom posed a threat to the community.  More importantly, this pretrial detention did not constitute "punishment."  See United States v. Salerno, 481 U.S. 739, 746-48 (1987); Schall v. Martin, 467 U.S. 253, 268-74 (1984); Bell v. Wolfish, 441 U.S. 520, 535-37 (1979).  For example, in Salerno the United States Supreme Court held that pretrial detention, based upon evidence that the accused presents a threat of danger to the public, "falls on the regulatory side of the dichotomy."  481 U.S. at 747.  The Court wrote:

> As an initial matter, the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment. . . . Congress did not formulate the pretrial detention provisions as punishment for dangerous individuals.  Congress instead perceived pretrial detention as a potential solution to a pressing societal problem.

-

> There is no doubt that preventing danger to the community is a legitimate regulatory goal.

Id. at 746-47 (emphasis added).  See also United States v. Grisanti, 4 F.3d 173, 175 (2d Cir. 1993) (holding that since a bail revocation hearing was not "'essentially criminal,'" and pretrial detention did not constitute punishment, the defendant was not twice put in jeopardy).

Our conclusion that revocation of appellant's bail was not punitive is buttressed by an analysis of Code § 19.2-120, which provides that a defendant has a statutory right to bail "unless there is probable cause to believe that:  (1) He will not appear for trial or hearing or at such other time and place as may be directed, or (2) His liberty will constitute an unreasonable danger to himself or the public."  (Emphasis added).  This provision allowing pretrial detention is not punishment in the usual sense; it serves a regulatory function, the protection of the public, rather than a criminal function, punishment.  See Salerno, 481 U.S. at 747 (holding that the pretrial detention of a dangerous individual is a legitimate regulatory goal); see also State v. Pennington, 952 S.W.2d 420, 423 (Tenn. 1997) (holding that the pretrial detention policy "was intended, at least in part, to protect the public from individuals who had been arrested on suspicion of driving under the influence.  This is a remedial purpose, not a punitive one . . . .").

-

Appellant's reliance on Bitter v. United States, 389 U.S. 15 (1967) (per curiam), is also misplaced.  In Bitter, the Supreme Court held that the trial court's revocation of bail, made without a hearing or any explanation of reasons by the trial judge, had the "appearance and effect of punishment."  Id. at 16.  In Bitter, at the conclusion of the government's case, the defendant sought leave of court to go to his office to gather additional evidence for his defense.  Although the defendant promptly appeared at every session of the trial, he was thirty-seven minutes late returning from the recess.  The trial court revoked the defendant's bail for the remainder of the trial.  See id. at 15-16.

On appeal, the United States Supreme Court reversed the defendant's convictions because the revocation of his bail "was unjustified" and "it constituted an unwarranted burden upon defendant and his counsel in the conduct of the case."  Id. at 16.

> The record in this case shows only a single, brief incident of tardiness, resulting in commitment of the defendant to custody for the balance of the trial in a jail 40 miles distant from the courtroom.  In these circumstances, the trial judge's order of commitment, made without hearing or statement of reasons, had the appearance and effect of punishment rather than of an order designed solely to facilitate the trial. Punishment may not be so inflicted.

Id. (emphasis added).

-

In the instant case, the trial court, after hearing evidence, clearly explained its reason for revoking appellant's bail, i.e., the danger he and his codefendant posed to the community.  One week after revocation of his bail, appellant was again afforded the opportunity to present evidence on his behalf and the trial court again found that the codefendants "represent a clear, present danger to this community. . . . [T]hey're not going to be riding around out on the street, pull up to people and pulling guns and robbing."[1]

In sum, we hold that the pretrial detention of appellant, the revocation of his bail on the robbery charge and setting no bail on the firearm charge did not bar the Commonwealth's prosecution for the offenses charged in the indictments. Additionally, we find that the revocation of bail was based upon the trial court's specific finding that appellant posed a threat to the community and it did not serve as a punishment for the substantive crimes.  These facts do not present a case involving

---

[1] In this regard, appellant contends that the revocation was equivalent to a conviction, in part, because the trial court stated that appellant would have to prove his innocence before he was released.  Despite this misstatement by the court, it acknowledged that appellant was presumed innocent, and it properly instructed the jury on the burden of proof at trial.  "The presumption of innocence is a doctrine that allocates the burden of proof in criminal trials . . . . But it has no application to a determination of the rights of a pretrial detainee during confinement."  Wolfish, 441 U.S. at 533 (emphasis added).  Accordingly, appellant's argument is without merit.

-

"multiple punishments" prohibited by the Double Jeopardy Clause and, therefore, we find no error.

### III.  Due Process

Appellant next contends the revocation of his bail violated his substantive due process rights under the Fourteenth Amendment because the revocation was not "rationally related to a legitimate nonpunitive government purpose" and, in the alternative, because the revocation was "excessive in relation to that purpose."  He also maintains that "[d]epriving a person of physical liberty without procedural due process and without according him the rights guaranteed by the constitution, including notice, confrontation, and trial by jury, is a sanction which is punitive in nature."  We disagree.

The due process clauses of the Federal and Virginia Constitutions provide that no person shall be deprived of life, liberty, or property without due process of law.  See U.S. Const. amend. XIV, § 1; Va. Const. art. I, § 11.  "'[S]ubstantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'"  Salerno, 481 U.S. at 746 (citations omitted).  "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner.  This requirement has traditionally been

-

referred to as 'procedural' due process." Id. (citations omitted).

In Salerno, the defendants challenged the constitutionality of the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq. (1982 ed., Supp. III), which allowed arrestees to be held without bail if the government established that no release conditions would ensure the public's safety. See id. at 741. Rejecting the defendants' argument that this form of pretrial detention constituted impermissible punishment, the Supreme Court held that pretrial detention under the Act was not penal, but rather was regulatory and had the reasonable goal of preventing dangerous defendants from committing crimes while free on bail. See id. at 746-47. "[T]he mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." Id. at 746. Rather, the reviewing court must look to legislative intent to determine whether the statute authorizing pretrial detention is designed to be punitive or regulatory. See id. at 747. And "[t]here is no doubt that preventing danger to the community is a legitimate regulatory goal." Id.

Applying these principles to the instant case, we hold that the revocation of appellant's bail violated neither his substantive nor procedural due process rights. Code § 19.2-120 provides that an accused shall be released on bail pending trial, unless the trial court finds probable cause to believe

-

that the accused is either a threat to abscond, or his or her release poses an unreasonable danger to the community. Additionally, "bail can be revoked based upon such a finding [of probable cause]." Heacock v. Commonwealth, 228 Va. 235, 240, 321 S.E.2d 645, 648 (1984). Like the Bail Reform Act at issue in Salerno, Code § 19.2-120 is regulatory, not penal, and provides for pretrial detention only if the accused is a threat to abscond or poses a risk to the safety of the community. The trial court found, based on evidence presented at the joinder hearing, that appellant posed a danger to the community. Accordingly, appellant's pretrial detention did not violate his substantive due process rights. See Salerno, 481 U.S. at 747-48 (holding that pretrial detention for "future dangerousness" constituted permissible regulation that did not violate substantive due process); Schall, 467 U.S. at 268-70 (holding that preventive detention of juveniles served legitimate state objective and was not denial of due process).

Moreover, appellant's pretrial detention did not violate his procedural due process rights. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property," Carey v. Piphus, 435 U.S. 247, 259 (1978), and the rules "guarantee[ ] that a person shall have reasonable notice and opportunity to be heard before any binding order can be made affecting the person's rights to liberty or property." McManama

-

v. Plunck, 250 Va. 27, 34, 458 S.E.2d 759, 763 (1995) (emphasis added). "Due process is a flexible concept, and the procedural protections required in a certain instance vary according to the circumstances of the particular case." Jackson v. W., 14 Va. App. 391, 411, 419 S.E.2d 385, 397 (1992).

In the instant case, when the trial court made its initial, sua sponte ruling to revoke appellant's bail, appellant did not object. Moreover, although appellant was afforded an opportunity to present evidence on his behalf at the hearing to reinstate bail, he chose not to present any evidence at that time. The Commonwealth urged the trial court to deny the motion to re-admit appellant to bail on the robbery charge and asked the trial court to deny bail on the firearm charge. Appellant relied upon his oral argument offered to the trial court. Most importantly, appellant had the opportunity and statutory right to appeal the trial court's decision but chose not to do so. See Code § 19.2-124 (allowing the right to appeal a denial of bail). We hold that under these circumstances, appellant received all the process he was due. See Schall, 467 U.S. at 277 (holding that "notice, a hearing, and a statement of facts and reasons [for detention]" are constitutionally adequate procedures under the Due Process Clause).

## IV.  REVOCATION OF BAIL

Finally, appellant contends the trial court erred by failing to defer to previous determinations admitting him to

-

bail.  Specifically, he argues the initial determinations by other "judicial officers" to set bail were findings that he did not present a danger to society.  According to appellant, these findings "are entitled to the highest degree of deference" and the decisions admitting him to bail are "binding on other judges of the same jurisdiction under the law of the case doctrine." Applying this rationale, appellant concludes the trial court lacked the authority to order the revocation of his bail.  We disagree.

The Supreme Court of Virginia has held that bail can be revoked upon a finding of probable cause to believe that, among other things, the accused is a danger to society.  See Heacock, 228 Va. at 240, 321 S.E.2d at 648.  "If an application for bail, i.e., release from custody, can be denied upon a finding of probable cause to believe that the accused will not appear or will constitute an unreasonable danger while at liberty, bail can be revoked upon such a finding."  Id. (emphasis added). Additionally, in considering terms of bail, the Code mandates that the trial court consider the nature and circumstances of the crime, the weight of the evidence, whether a firearm was used, and any other relevant circumstances.  See Code § 19.2-121.[2]

---

[2] Code § 19.2-121 provides:

> If the person is admitted to bail, the terms
> thereof shall be such as, in the judgment of

-

In the instant case, the trial court revoked appellant's bail after hearing unrebutted evidence that, in a single night, appellant participated in two robberies in which a firearm was used.  The joinder hearing was the first occasion of record at which any "judicial officer" heard that appellant admitted:  (1) planning to come to Virginia to commit robbery; (2) committing another robbery earlier in Alexandria; and (3) driving the vehicle from which his codefendant pointed a gun at their victims while robbing them.  The record contains no evidence

any official granting or reconsidering the same, will be reasonably fixed to assure the appearance of the accused and to assure his good behavior pending trial.  The judicial officer shall take into account (i) the nature and circumstances of the offense; (ii) whether a firearm is alleged to have been used in the offense; (iii) the weight of the evidence; (iv) the financial resources of the accused or juvenile and his ability to pay bond; (v) the character of the accused or juvenile including his family ties, employment or involvement in education; (vi) his length of residence in the community; (vii) his record of convictions; (viii) his appearance at court proceedings or flight to avoid prosecution or failure to appear at court proceedings; (ix) whether the person is likely to obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate a prospective witness, juror, or victim; and (x) any other information available which the court considers relevant to the determination of whether the accused or juvenile is unlikely to appear for court proceedings.

-

that any other "judicial officer" had knowledge that a firearm had been used.[3]

Although appellant's bail was initially set at $10,000, and was later reduced to $3,000, we cannot infer from the record before us that another "judicial officer," knowing all the facts, found that appellant was not dangerous. The trial judge had the authority and duty to revoke appellant's bail if evidence presented to him established that appellant posed a danger to the community. Based upon such a finding, the trial court did so.[4]

Nonetheless, relying on federal cases applying federal law, appellant argues that "a judge has no authority to reconsider, disturb, modify, or vacate another judge's pretrial detention absent clear error of law or significant change in

---

[3] In his brief, appellant contends "the only evidence presented and considered by the court related to the charges of robbery made against him, which had also been considered by those preceeding [sic] judicial officers." (Emphasis added). He also argues the magistrate who set the initial $10,000 bail and the general district court judge who reduced his bail to $3,000 determined that he was not a danger to society. Appellant concedes these facts are "outside the record" and there is no preliminary hearing transcript in this case. Accordingly, we are unable to determine what evidence of dangerousness, if any, was presented to those judicial officers.

[4] Contrary to appellant's argument, the law of the case doctrine does not apply in this context. "'A trial court is empowered to change a legal determination as long as it retains jurisdiction over the proceedings before it.'" Bottoms v. Commonwealth, 22 Va. App. 378, 384, 470 S.E.2d 153, 156 (1996) (holding that the trial judge was not bound by another judge's ruling on the defendant's earlier motion in limine) (citation omitted).

-

circumstances." See United States v. Rouleau, 673 F. Supp. 57 (D. Mass. 1987); United States v. Thomas, 667 F. Supp. 727 (D. Or. 1987); United States v. Logan, 613 F. Supp. 1227 (D. Mont. 1985). Appellant's reliance on those cases is misplaced. The pretrial detention procedures used by the federal district courts in those cases involved the Bail Reform Act of 1984, which is inapplicable to the instant case. See Rouleau, 673 F. Supp. at 58; Thomas, 667 F. Supp. at 728; Logan, 613 F. Supp. at 1228. More importantly, even the federal cases cited by appellant recognized that a detention order may be amended if "the underlying factual circumstances have changed in some significant way." Rouleau, 673 F. Supp. at 59; see Logan, 613 F. Supp. at 1228 (holding that on a motion to reconsider determination of another district judge denying bail pending trial, second district judge may not disturb the determination absent "clear error of law" or "changed circumstances" warrant reconsideration of the findings); see also United States v. Gallo, 653 F. Supp. 320, 327 (E.D.N.Y. 1986) ("Where significantly changed circumstances raise a new issue of law, and additional evidence is proffered, a judicial officer has inherent power to reconsider his or her own order.").

It was not until after the trial court learned that a firearm had been used in the robbery, and after the grand jury directly indicted appellant for the use of a firearm in the commission of that robbery, did the trial court revoke

-

appellant's bail on the robbery charge and deny bail on the firearm charge. Appellant had a clear remedy, a statutory right, to contest the revocation of his bail as provided by Code § 19.2-124. "If a judicial officer denies bail to a person, requires excessive bond, or fixes unreasonable terms of recognizance . . ., the person may appeal therefrom successively to the next higher court or judge thereof, up to and including the Supreme Court of Virginia or a justice thereof permitted by law." Code § 19.2-124; see also Stack v. Boyle, 342 U.S. 1, 6 (1951) ("The proper procedure for challenging bail as unlawfully fixed is by a motion for reduction of bail and appeal to the Court of Appeals from an order denying such motion.").

In the instant case, the trial court revoked appellant's bail at the joinder hearing on October 23, 1997, and denied appellant's motion to re-admit bail following a hearing on October 27, 1997. Although appellant noted an exception to the trial court's order, he did not appeal that decision pursuant to Code § 19.2-124. Instead, he remained incarcerated for two months pending trial before filing his "Plea of Former Jeopardy." By that time, appellant had already been convicted of the Alexandria robbery and firearm charges, which enabled the Commonwealth to present these prior convictions to the jury at the sentencing phase and to seek an enhanced punishment on the firearm conviction. Appellant's challenge to the present convictions, after failing to appeal the trial court's decision

-

revoking bail on the robbery charge and denying bail on the firearm charge, is without merit. See Eagleston v. Commonwealth, 18 Va. App. 469, 471-72, 445 S.E.2d 161, 163 (1994).[5]

The trial court's decision sua sponte to revoke appellant's bail does not mandate a different conclusion. Ordinarily, the Commonwealth initiates the revocation under Code § 19.2-132. Where the conditions of bail have been determined in an initial appearance before a judicial officer, bail may not be revoked unless the Commonwealth presents evidence that: (1) the person "violated a term or condition of his release, or is convicted of or arrested for a felony or misdemeanor"; or (2) "that incorrect or incomplete information . . . was relied upon by the court or magistrate establishing initial bond." Code § 19.2-132(B). However, nothing in Code § 19.2-132 prohibits or limits a trial court in an appropriate case from revoking the defendant's bail sua sponte upon learning information that establishes probable cause to believe the defendant is a danger to society. Cf. Code

---

[5] Appellant's argument that Code § 19.2-124 only applies to the initial determination of bail, and not to the revocation of bail, is without merit. Here, appellant was denied bail on the firearm charge, which was subject to appeal under Code § 19.2-124. Additionally, the decision revoking bail on the robbery charge had the same effect as a denial of bail and became appealable at that time. Cf. Heacock, 228 Va. at 240, 321 S.E.2d at 648 (holding the denial of bail and the revocation of bail to the same standard of proof).

-

§ 19.2-132(B) (court may revoke bail based upon "incomplete information" relevant to establishing the initial bond).

In sum, we conclude that the trial judge had the authority to revoke appellant's bail upon his finding, based on evidence heard <u>ore</u> <u>tenus</u>, that appellant posed an unreasonable threat to the community.  The trial judge did not abuse his discretion. <u>See</u> <u>Fisher v. Commonwealth</u>, 236 Va. 403, 411, 374 S.E.2d 46, 51 (1988).

For the foregoing reasons, appellant's convictions are affirmed.

<u>Affirmed.</u>

Benton, J., concurring.

I concur in Parts I, II, and III of the majority opinion and in the judgment affirming the convictions. I do not join in Part IV.

In Virginia, the procedures for determining whether to grant or revoke bail are statutory. See Code §§ 19.2-119 - 19.2-152.4. Those statutes do not permit a trial judge sua sponte and without prior notice to revoke bail of a person previously admitted to bail.

Although the bail statutes have been substantially revised after the proceeding in this case, the following statute was applicable at that time:

> A. Although a party has been admitted to bail, if the amount of any bond is subsequently deemed insufficient, or the security taken inadequate, the attorney for the Commonwealth of the county or city in which the accused or juvenile taken into custody pursuant to § 16.1-246 is held for trial may, on reasonable notice to the accused or juvenile and to any surety on the bond of such accused or juvenile, move the court, or the appropriate judicial officer to increase the amount of such bond. The court may, in accordance with subsection B, grant such motion and may require new or additional sureties therefor, or both. Any surety in a bond for the appearance of such party may take from his principal collateral or other security to indemnify such surety against liability. The failure to notify the surety will not prohibit the court from proceeding with the bond hearing.
>
> B. Subsequent to an initial appearance before any judicial officer where the conditions of bail have been determined, no

-

accused or juvenile, after having been
released on a bond, shall be subject to a
motion to increase such bond unless (i) the
accused or juvenile has violated a term or
condition of his release, or is convicted of
or arrested for a felony or misdemeanor, or
(ii) the attorney for the Commonwealth
presents evidence that incorrect or
incomplete information regarding the
accused's or juvenile's family ties,
employment, financial resources, length of
residence in the community, record of
convictions, record of appearance at court
proceedings or flight to avoid prosecution
or failure to appear at court proceedings,
or other information relevant to the bond
determination was relied upon by the court
or magistrate establishing initial bond.

Code § 19.2-132. This statute, which requires reasonable notice
to the accused to change bail, necessarily requires the same
notice before bail may be revoked.

Leroy Dorsey and an accomplice were arrested August 7,
1997, and charged with a robbery in Arlington and a robbery in
Alexandria. After Dorsey gave a statement to the police, a
magistrate in Arlington admitted him to bail. Following a
hearing four days later, a general district court judge reduced
the amount of the bail. Later, at the preliminary hearing, the
general district court judge certified the robbery charge to the
grand jury and continued Dorsey's bail. The prosecutors sought
and received from the grand jury indictments charging Dorsey
with robbery and use of a firearm in the commission of that
robbery. At a hearing following the issuance of the
indictments, the prosecutors appeared before a circuit court

-

judge, obtained a date for a hearing, and made no motion to increase or revoke Dorsey's bail. On October 14, 1997, the Commonwealth appeared before the same judge concerning a motion in this case. The judge granted a continuance and ordered that Dorsey's "Bond is continued."

The prosecutor filed a motion to join the trials of Dorsey and the accomplice. At a hearing on that motion, the trial judge, who was not the same circuit court judge that earlier continued Dorsey's bail, granted the Commonwealth's joinder motion. After setting the joined cases for a jury trial, the trial judge <u>sua</u> <u>sponte</u> revoked Dorsey's bail. The prosecutor had not requested this revocation.

Although I agree with the majority opinion that Dorsey's counsel did not object when the trial judge <u>sua</u> <u>sponte</u> revoked Dorsey's bail and that Dorsey failed to appeal that action pursuant to Code § 19.2-124, I cannot join in an opinion condoning the trial judge's action. "When government action depriving a person of . . . liberty survives substantive due process scrutiny, it must still be implemented in a fair manner." <u>United States v. Salerno</u>, 481 U.S. 739, 746 (1987). Our statutory bail procedures are designed to guarantee reasonable notice and an opportunity to be heard so that bail decisions do not result in mistaken, unjustifiable, and arbitrary deprivations.

-

The statute places upon the prosecutor the burden to initiate actions to revoke bail upon notice to the accused.  In this case, however, the trial judge acted on his own initiative. To sanction this deviation from the statutory procedure invites arbitrary and capricious results because any judge who is so inclined can now revoke bail at any hearing based solely on his or her subjective belief that another judge, who had previously admitted an accused to bail, acted wrongly.  "[W]e must assume that 'the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.'"  City of Virginia Beach v. ESG Enters., Inc., 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992) (citation omitted).[6]

---

[6] The current statute explicitly addresses revocation and would bar this type of revocation.  In pertinent part, it provides as follows:

> Subsequent to an initial appearance before any judicial officer where the conditions of bail have been determined, no person, after having been released on a bond, shall be subject to a motion to . . . revoke bail unless (i) the person has violated a term or condition of his release, or is convicted of or arrested for a felony or misdemeanor, or (ii) the attorney for the Commonwealth presents evidence that incorrect or incomplete information . . . was relied upon by the court or magistrate establishing initial bond.

Code § 19.2-132(B) (emphasis added).

-

The record contains no evidence to support the assertion that the joinder hearing was the first occasion at which any "judicial officer" heard the facts concerning the robbery. The record does establish, however, that at 2:15 a.m., immediately after his arrest at 1:40 a.m., Dorsey gave a complete statement to the police concerning the armed robberies. Thus, it is likely that both the magistrate, who initially set bail at 5:12 a.m. on August 7, and the judge, who found probable cause on September 10, 1997, and re-admitted Dorsey to bail, heard the report of the police. In any event, before he sua sponte revoked Dorsey's bail, the trial judge made no inquiry concerning the basis upon which those other judges admitted Dorsey to bail. He had no knowledge whether the magistrate and the two judges who admitted Dorsey to bail were aware of the particular circumstances of the offenses. He merely made a de novo decision to revoke Dorsey's bail. That ruling, made without notice or hearing, was arbitrary and "had the appearance . . . of punishment." Bitter v. United States, 389 U.S. 15, 17 (1967).

Once a bail decision has been made, neither the accused nor the prosecutor is statutorily entitled to have the issue of bail revisited de novo whenever another judge hears a motion or is assigned to determine some aspect of the case. See Code § 19.2-132(B). Parties are not entitled to "shop" for a judge until that party finds one who will consider de novo the bail

-

issue and grant relief. Likewise, the statute does not authorize each judge who is assigned a motion in a case to reconsider sua sponte the issue of bail de novo.

Without sanctioning the trial judge's actions, I would hold that Dorsey neither objected nor appealed when the trial judge sua sponte revoked his bail. See Rule 5A:18; Code § 19.2-124. Furthermore, the "ends of justice" exception to Rule 5A:18 is of no avail to Dorsey because the record establishes that on October 27, 1997, four days after the judge revoked bail, a hearing was held to determine whether to re-admit Dorsey to bail. When the trial judge refused to do so, no appeal was filed.

For these reasons, I would affirm the convictions.