# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Monday the 12th day of February, 2018.*

PRESENT: All the Justices

Commonwealth of Virginia,                                                                    Appellant,

  against       Record No. 180173
                Circuit Court Nos. CR17-522; CR17-523

Bernard Clark Duse, Jr.,                                                                         Appellee.

From the Court of Appeals of Virginia

Upon the petition of the Commonwealth of Virginia ("Commonwealth"), an appeal is awarded the Commonwealth from an order of the Court of Appeals of Virginia entered on January 25, 2018.

Upon further consideration whereof, the Court is of the opinion that the Court of Appeals erred in ruling that the Circuit Court of Fauquier County did not abuse its discretion in granting Bernard Clark Duse, Jr. ("Duse") pre-trial bail.[1]  Accordingly, for the following reasons, we reverse the January 25, 2018 order of the Court of Appeals and vacate the January 3, 2018 circuit court order granting Duse bail.

Duse is charged with first-degree murder of his work supervisor and use of a firearm in the commission of that murder.  His trial is set for March 19, 2018.  On December 28, 2017, the circuit court heard Duse's motion for pre-trial bail.  Code § 19.2-120 governs pre-trial bail. Under Code § 19.2-120, a person held in custody pending trial for a criminal offense "shall be admitted to bail by a judicial officer, unless there is probable cause to believe that . . . [h]e will not appear for trial [or] [h]is liberty will constitute an unreasonable danger to himself or the public."  Code §§ 19.2-120(A)(1) and (2).  However, because Duse is charged with first-degree murder, for which the maximum sentence is life imprisonment, *see* Code §§ 18.2-10(b) and -32, the circuit court was required to presume, subject to rebuttal, that no condition or set of conditions will reasonably assure Duse's appearance or the safety of the public.  *See* Code §

---

[1] Duse was denied bail in the general district court.

19.2-120(B)(2) ("The judicial officer shall presume, subject to rebuttal, that no condition or combination of conditions will reasonably assure the appearance of the person or the safety of the public if the person is currently charged with [a]n offense for which the maximum sentence is life imprisonment or death.").

In determining whether Duse rebutted this presumption, the circuit court was required to consider the following factors and "such others as it deem[ed] appropriate:" (1) the nature and circumstances of the charges, (2) Duse's history and characteristics, "including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history [of] drug or alcohol abuse, criminal history," any criminal street gang membership, and his record of appearances at court proceedings, and (3) "[t]he nature and seriousness of the danger" Duse's release would pose to "any person or [to] the community." Code §§ 19.2-120(E)(1) – (3).

As to the nature and circumstances of the offenses, the Commonwealth alleged that on July 26, 2017, Duse was seen lying in wait behind his workplace at a pharmacy in Warrenton, Virginia. Duse had recently learned that the central claim in his age discrimination suit against the pharmacy had been dismissed and his attorney had moved to withdraw. Duse's lawsuit had been going on for one and a half years and several supervisors and corporate officers, including Rex Olsen, had testified against Duse in depositions. Duse hid behind a dumpster at the rear of the pharmacy and shot Olsen as Olsen was throwing away the store's trash. After being shot in the back of the head, Olsen crumpled to the ground, turning face upward. Duse was seen leaning over Olsen, shooting him in the face at close range. Duse then took Olsen's cell phone, wallet, and store keys and walked away calmly, heading back to a vehicle and ultimately to his home in Fairfax County. He was arrested six days later.

The Commonwealth's memorandum opposing bail and its exhibits (which the circuit court received as evidence) showed that Duse's employment history from the 1970's through his arrest in 2017 was rife with instances of protracted employment disputes, litigation and his repeated accusations of persecution and conspiracies against him by co-workers and supervisors at a major computer electronics technology firm, a national book retailer, and the pharmacy. These exhibits contained allegations that Duse was mentally unstable and a threat to managers and co-workers, including his current supervisors at the pharmacy, who feared him "a great

2

deal." At one point, his former electronics technology employer found Duse's complaints so bizarre and disturbing that it hired security specifically to protect its employees from him, and that it had conducted surveillance of Duse.

The Commonwealth's exhibits also showed Duse's history of mental health issues. In 1984, a psychiatrist found Duse was an "Obsessive Compulsive person." In 1991, a psychiatrist, who evaluated Duse at the former electronics technology employer's request, concluded Duse suffered from a paranoid personality disorder. Another psychiatrist, Dr. Howard Zonana, who was associated with Yale University and who also evaluated Duse at that employer's request, conducted multiple interviews of Duse and other individuals between 1986 and 1992, performed psychological testing of Duse, and reviewed voluminous documents. In an extensive 1992 report, Dr. Zonana diagnosed Duse with "a Personality Disorder Not Otherwise Specified as there [were] mixed elements of primarily an Obsessive-Compulsive personality coupled with features of a Paranoid Personality Disorder." Dr. Zonana noted Duse's paranoia may have reached "delusional proportions" at times. In 2006, in connection with Duse's claims against the national book retailer company, a psychiatrist diagnosed Duse with obsessive compulsive personality disorder with narcissistic traits. That psychiatrist noted Duse's own therapist had diagnosed him in 1999 with major depression and had noted Duse had suicidal thoughts from 1984 to 1992 and displayed several areas of "distorted thinking."

Two letters dated August 21, 2017, addressed to the circuit court judge, documented some of Duse's past conduct. In the first letter, a woman who had supervised Duse at the book retailer beginning in 2007, wrote that Duse created a negative work environment, did not accept feedback, used rude and unprofessional language, and was "combative and forceful in conversations." She believed Duse's pattern of forceful behavior would continue and was concerned about him being released from jail. In the second letter, a customer of the pharmacy who encountered Duse ten days before Olsen's murder wrote that Duse had been verbally abusive and aggressive towards her. She complained to the pharmacy and talked to Olsen about the complaint hours before Olsen's death. She believed Duse was a danger to her, his former colleagues, and the public.

Duse presented evidence through defense counsel's proffers and witness testimony.[2] Counsel proffered that Duse was 76 years old with no prior criminal record and he had appeared at all court proceedings. Duse has resided in Virginia for 22 years, including 16 years at his current address. He has been married for over 15 years and his wife was in the courtroom. He had served in the Army and was honorably discharged. He has an industrial engineering degree and a Master's degree in business from Harvard. He had been employed consistently throughout his life. He had limited financial resources, but had been able to retain counsel through family support. He is a United States citizen and had tendered his passport to the general district court at the initial bond hearing (although the passport could not be located at the time of the circuit court hearing). Counsel further proffered there was no evidence of mental health issues in Duse's past or present, he had never abused alcohol or drugs, had never been a member of a criminal street gang, and there was no indication his release would pose a danger to anyone. Counsel acknowledged that Duse and his wife own a home in the Philippines. During his pre-trial services interview, Duse failed to disclose that he and his wife had planned to relocate to that home.

Lori Dance, Duse's niece and a Nevada college professor, testified that Duse had been a "father figure" and "constant advisor" to her. Dance described Duse as the "patriarch of the family" and the person "we all go to for advice and counsel."

Mark Warren, a Massachusetts college professor, testified he had known Duse for 25 years as a friend and mentor. Warren had last seen Duse for a few hours in the spring of 2015. Warren described Duse as a "superrational," knowledgeable, kind, calm, and generous person, whom Warren had never seen become angry.

An employee of a bail bond company testified that a GPS device could be used to monitor Duse's location if he were to be released on bond. If Duse left the designated area or tampered with the device, the employee testified that the bond company would be notified immediately, and that he had authority to arrest Duse and bring him back to jail. The bond

---

[2] Duse apparently also gave the judge several letters and emails from various individuals in support of his motion and a document concerning one of his court cases. These documents are not in the record before this Court and they are not discussed in any detail in the briefs.

employee acknowledged that GPS monitoring would not stop Duse from going out and murdering someone.

Testifying for Duse as an expert in "the field of psychiatric evaluations as it deals with paranoia," Dr. William Lawson, a psychiatrist of 25 years, stated he met with Duse for approximately two hours at the jail and spent two hours reviewing the Commonwealth's memorandum and exhibits. Dr. Lawson did not administer any psychological tests to Duse. He gave Duse a "mental status exam" and asked him several questions designed to "look at the extent to which people believe whether or not events were overvalued ideas versus frank paranoia." Based on this meeting and document review, Dr. Lawson opined that Duse did not have a personality disorder related to the litigation with his former computer electronics employer. Dr. Lawson further opined that "right now" Duse would not be a "physical threat to the community" if he was released on conditions. Dr. Lawson did not complete a written report.

Dr. Lawson acknowledged that he "reached out" to Duse's counsel on his own accord after a retired judge, who served with Dr. Lawson on a commission that studies "sentencing issues and the tendency of African Americans to be incarcerated when they're mentally ill," told Dr. Lawson there was a case he might be interested in and that Duse needed a psychiatric evaluator. Based on his research, Dr. Lawson did not believe paranoid personality disorder should be listed in the standard psychiatric Diagnostic and Statistical Manual, DSM-5, as a disorder, although he acknowledged others disagreed. He also acknowledged paranoid personality disorder is currently listed in the DSM-5.

In ruling on Duse's motion for bail, the circuit court initially observed it was not "adjudicating the paranoia or lack thereof of this particular defendant." The court then noted the Commonwealth's primary evidence was an "aged" 25-year old report (presumably Dr. Zonana's report) prepared in connection with "another case" and was not subject to cross-examination. The court said it would give "some weight" to this hearsay report, but not the same as it would accord to the testimony of Dr. Lawson, who was present to be cross-examined.[3] The court then found Dr. Lawson's testimony "rather superficial . . . in terms of his analysis" and lacking "detail

---

[3] The court incorrectly referred to Dr. Lawson as "Dr. Warren" during its ruling.

5

in terms of [his] examination." Based on those observations, the court concluded that Dr. Zonana and Dr. Lawson "counteract and balance each other off." Continuing, the court stated:

> Furthermore, we're not trying this case. We're not . . . making an adjudication of Mr. Duse here as to his guilt beyond a reasonable doubt. There may have been some probable cause determinations, but those were done with less than 50 percent certainty. That's what probable cause is. It's a reasonable belief. He hasn't been adjudicated guilty yet. He's entitled to a presumption of innocence.

Turning to Code § 19.2-120, the court noted the statute directed it to presume, subject to rebuttal, that no conditions would assure Duse's appearance or the safety of the public. As to the appearance element of the analysis, the court found it was likely that Duse would appear for court proceedings, as he had no history of failing to appear and his age made it unlikely he would "take off and head off across the country and try to escape into Canada." As to the public safety factor, the court noted it had "serious concern about the nature of the circumstances alleged," but that it was not aware of "any specific threat to any other individuals." The court further stated: "There's no history of violence here with Mr. Duse. We don't know of any particular person or persons other than perhaps unnamed employees at [the pharmacy], which I'm not aware of at this point, who could be threatened by [him]. So right now at least I don't have an indication that he presents an immediate threat to other individuals."

Based on these findings, the court noted that a GPS device could be used to make Duse's location known at all times, then granted his motion for bail and set his bond at $75,000 cash or corporate surety, with the additional conditions that he (1) avoid all contact with employees of the pharmacy, (2) refrain from possession of firearms, (3) be monitored by a GPS device through the bond company, (4) not travel outside Fairfax County and the City of Alexandria, except for medical treatment at the VA Hospital in Washington, D.C., (5) travel to Fauquier County only for court appearances, and (6) surrender his passport to the circuit court.

This Court reviews a trial court's decision whether to grant bail for abuse of discretion. *See Fisher v. Commonwealth*, 236 Va. 403, 411, 374 S.E.2d 46, 51 (1988). The trial court must exercise "not an arbitrary discretion, but a sound judicial discretion." *Judd v. Commonwealth*, 146 Va. 276, 277, 135 S.E. 713, 714 (1926). "[T]he abuse of discretion standard requires a

reviewing court to show enough deference to a primary decisionmaker's judgment that the court does not reverse merely because the reviewing court would have come to a difference result in the first instance." *Lawlor v. Commonwealth*, 285 Va. 187, 212, 738 S.E.2d 847, 861 (2013) (internal quotation marks and citation omitted).

The three principal ways a trial court abuses its discretion are when (1) it fails to consider a relevant factor that should have been given significant weight, (2) it considers and gives significant weight to an irrelevant or improper factor, or (3) it considers all proper factors, and no improper ones, but, in weighing those factors, the court commits a clear error in judgment. *Id.* at 213, 738 S.E.2d at 861. "When the law circumscribes the range of choice available to a court in the exercise of its discretion[,] [t]he abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Shebelskie v. Brown*, 287 Va. 18, 26-27, 752 S.E.2d 877, 882 (2014) (internal quotation marks and citation omitted).

The Commonwealth contends the circuit court abused its discretion for four reasons. First, the Commonwealth argues the circuit court abused its discretion by applying the doctrine of presumed innocence to a pre-trial bail hearing. We agree.

"The presumption of innocence is a doctrine that allocates the burden of proof in criminal trials . . . [b]ut it has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun." *Bell v. Wolfish*, 441 U.S. 520, 533 (1979); *see also Dorsey v. Commonwealth*, 32 Va. App. 154, 164 n.1, 526 S.E.2d 787, 164 n.1 (2000). By virtue of being indicted for first-degree murder, Duse is "presumed" to be "an unreasonable danger to himself or the public" and a flight risk. *See* Code § 19.2-120(B)(2). Therefore, by applying the presumption of innocence, the circuit court utilized an erroneous legal standard to guide its consideration of the Code § 19.2-120 factors, and its decision regarding bail, premised on that consideration, was an abuse of discretion.

The Commonwealth next argues the circuit court abused its discretion by finding that the brutal and calculated circumstances of the murder were outweighed by the absence of "any specific threat" or "immediate threat" to any other individuals. We agree.

In so finding, the circuit court gave no meaningful weight to the relevant statutory factors directing focus upon the nature and circumstances of the murder and the nature and seriousness of the danger to any person or to the community that Duse's release would pose.

7

*See* Code §§ 19.2-120(E)(1) and (3). The court inexplicably stated that Duse had no history of violence, ignoring that he currently was under indictment for the execution-style murder of his work supervisor. Additionally, the court never discussed Duse's long history of mental health disorders, his history of protracted litigation against former employers, or the evidence that former co-workers, supervisors, and a customer had reported fearing him. Moreover, the existence or nonexistence of "specific" or "immediate" threats to others is not a factor required to be considered under Code § 19.2-120(E), and these considerations certainly would not alone be sufficient to rebut the presumption that no conditions would reasonably assure the safety of the public.

The Commonwealth also argues the circuit court abused its discretion by speculating that Duse was "unlikely" to abscond because of his age. We agree.

Even assuming the court appropriately deemed Duse's age to be a cognizable factor in determining whether he rebutted the presumption that no conditions would reasonably assure his appearance, the court never explained why Duse's age made absconding unlikely. Instead, the court conjectured, without evidence, that Duse was too old to be a flight risk. This was clearly an error in judgment. Given his age, his apparent ownership of a home in the Philippines, and the specter of a murder conviction, Duse has every incentive, along with the means, to flee prosecution.

Lastly, the Commonwealth argues that the circuit court abused its discretion by wholly discounting and according no weight to Duse's well-documented prior history of mental health disorders. We agree.

In weighing the statutory factor concerning the history of Duse's mental condition, the circuit court committed a clear error in judgment. It was Duse's burden to rebut the presumption that no conditions would reasonably assure the safety of the public. Other than the testimony of his niece and a friend of 25 years, the only evidence Duse presented as to his mental condition was Dr. Lawson's testimony, which the circuit court itself found was "superficial" and lacking detail.

Considering the evidence presented and the applicable presumption, we hold that the circuit court abused its discretion in concluding that Duse rebutted the presumption that no conditions would reasonably assure the safety of the public and his appearance at trial. Further,

8

the Court of Appeals erred in concluding that the circuit court "did not abuse its discretion in granting bond," and by denying the Commonwealth's motion to revoke bond.

Accordingly, the Court of Appeals' January 25, 2018 order is reversed and the circuit court's January 3, 2018 order granting Duse pre-trial bail is vacated. The rule to show cause issued on February 7, 2018 is discharged.

This order shall be certified to the Court of Appeals of Virginia and the Circuit Court of Fauquier County and shall be published in the Virginia Reports.

A Copy,

Teste:

Patricia L Harrington, Clerk

9