Simata **WILCOX**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0008–CR–537.

Court of Appeals of Indiana.

April 30, 2001.

Transfer Denied July 19, 2001.

Eric K. Koselke, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Simata Wilcox ("Wilcox") brings this interlocutory appeal challenging the trial court's denial of her Motion to Dismiss on the ground that her prosecution for Battery subjected her to Double Jeopardy. We affirm.

### Issue

The sole issue presented is whether revocation of Wilcox's bail subjected her to "jeopardy" such that Double Jeopardy principles preclude her pending criminal prosecution for the same conduct that supported the revocation of her bail.

### Facts and Procedural History

On June 16, 1999, the State charged Wilcox with one count of Criminal Mischief, a Class D felony, two counts of Battery, both as Class A misdemeanors, and one count of Criminal Conversion[1] stemming from an altercation between Wilcox, her ex-boyfriend Sean Woodard ("Woodard"), and Woodard's girlfriend, Shaila Mulholland ("Mulholland"). On August 6, 1999, Wilcox agreed that, as a condition of her release upon bail prior to trial, she would have no contact with Woodard or Mulholland. Wilcox was subsequently released on bond. On October 29, 1999, the court amended the no contact order and permitted Wilcox to contact Woodard on the condition that Wilcox refrain from abuse, threats, or disturbances of the peace.

On March 17, 2000, Wilcox allegedly confronted Woodard and struck him with an object and argued with Mulholland in violation of the standing no contact order. Based upon this incident, the State on April 12, 2000 charged Wilcox with Battery as a Class B misdemeanor and with Invasion of Privacy, a Class B misdemeanor[2], for allegedly striking during a March 17, 2000 confrontation. Additionally, on April 13, 2000, the State sought pursuant to Indiana Code section 35–33–8–5(d) to revoke the original bond Wilcox posted for the arrest arising from the June 16, 1999 incident between Wilcox, Woodard and Mulholland. A hearing was held May 4, 2000, after which the court remanded Wilcox to the custody of the Sheriff. On May 8, 2000, the court ruled that Wilcox had violated the no contact order by failing to leave Woodard's apartment when she saw Mulholland, and by attacking Woodard. The court went on to rule that Wilcox would be "sentenced" to a total of ten days for the violation. The court gave her five days of credit for time served and released her that day. The court then reinstated Wilcox's bond. Wilcox did not appeal the trial court's revocation of her bail.[3]

On June 14, 2000, Wilcox filed her Motion to Dismiss the April 12, 2000 Battery and Invasion of Privacy charges, claiming that prosecution for these offenses would violate the Double Jeopardy clauses of both the federal and Indiana constitutions because she had already been subjected to jeopardy for the same matters during the

---

1. IND.CODE §§ 35–43–1–2, 35–42–2–1, and 35–43–4–3 respectively.

2. IND.CODE §§ 35–42–2–1 and 35–46–1–15.1, respectively.

3. The trial court's unfortunate and incorrect characterization of the revocation of Wilcox's bail as a "sentence" has created confusion about the nature of the court's ruling on the State's Motion to Revoke Bond. Despite this semantic confusion, the court expressly ruled that Wilcox's bail would be reinstated upon her release, making it is clear that the court did not impose a sentence (something the court had no power to do), but rather temporarily revoked Wilcox's bail, a ruling Wilcox has never directly challenged.

bond revocation proceedings.[4] At the conclusion of a hearing on the motion held on July 17, 2000 the judge ruled against Wilcox, but advised that it would certify the question for interlocutory appeal. Wilcox accordingly filed her petition to certify the court's order for interlocutory appeal on July 17, 2000, which the court granted on July 25, 2000. This court agreed to accept jurisdiction over the appeal by order dated September 5, 2000.

### Discussion and Decision

#### A. Standard of Review

The issue before us, whether principles of double jeopardy preclude the use of the same facts to support both the revocation of a pre-trial release bond and a subsequent criminal prosecution, is a pure question of law. We accordingly conduct a *de novo* review. *See Spears v. State,* 735 N.E.2d 1161, 1165 (Ind.2000), *reh'g denied.*

#### B. Analysis

#### 1. State's Motion to Strike

■ We initially note that the State has filed a Motion to Strike certain portions of the record and citations thereto contained in the Brief of Appellant. The State complains that Wilcox has included in the record certain items from the court's file regarding the original charges, including the transcript of the bail revocation hearing, which are records of an unrelated proceeding under another cause number, and which were not attached to Wilcox's Motion to Dismiss and thus not before the trial court. Inclusion of and citation to these items, according to the State, would violate the rule against consideration of matters outside the record. *See Chesterfield Management, Inc. v. Cook,* 655 N.E.2d 98, 101 (Ind.Ct.App.1995). To the extent that any of the facts recounted

above are derived from the portions of the record to which the State objects, they are not pertinent to the legal issues here and simply provide context. The salient and undisputed facts necessary to the resolution of the purely legal questions involved here are that Wilcox's bail was temporarily revoked for the same conduct that gave rise to her subsequent pending charges of Battery and Invasion of Privacy. These facts are evident from the portions of the record to which the State does not object. Thus, if Wilcox has improperly included materials in the record here, such inclusion was harmless.

#### 2. Criminal Punishment, Civil Remedies, and Constitutional "Jeopardy"

Wilcox argues that her prosecution for Battery and Invasion of Privacy under the April 12, 2000 charges are barred by the double jeopardy clauses of the federal and Indiana constitutions. In particular, Wilcox claims that she was already subjected to jeopardy for the same conduct that gave rise to those charges as a result of the bond revocation proceedings.

■ In general, both the United States and Indiana constitutions prohibit a second prosecution for the same offense after an acquittal, a second prosecution for the same offense after a conviction, and multiple punishments for the same offense. *See Nunn v. State,* 695 N.E.2d 124, 125 (Ind. Ct.App.1998). The question whether an offense is the "same" as a subsequent one for double jeopardy purposes differs depending upon whether the double jeopardy claim is brought under the Indiana constitution or the federal constitution. *See United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)

---

4. Wilcox pled guilty to the original charges on July 3, 2000, and was sentenced to one year of probation. Her prosecution for the subsequent charges was stayed pending the outcome of this appeal.

(two statutory offenses are the "same" under the federal constitution if neither offense contains an element not contained in the other); *Richardson v. State,* 717 N.E.2d 32, 50–55 (Ind.1999) (under the Indiana constitution, offenses are the "same" if neither offense contains an element separate and distinct from the other such that the same evidence is not necessary to convict for both offenses, or when the actual evidence presented at trial fails to show that each challenged offense was established by separate and distinct facts). In this case, the State does not dispute Wilcox's claim that her pending Battery and Invasion of Privacy charges stem from the identical facts and constitute the same offenses at issue in the bond revocation proceedings. Rather, the State contends that the bond revocation hearing was not a criminal prosecution and therefore did not subject Wilcox to "jeopardy."

■ Double jeopardy prohibitions against repeat prosecutions and multiple punishments extend to the criminal reprosecution of a defendant in limited circumstances following proceedings outside the realm of traditional criminal prosecutions. *See Bryant v. State,* 660 N.E.2d 290 (Ind. 1995) (holding that assessment of controlled substance excise tax against defendant was a form of jeopardy precluding subsequent prosecution on the State's charges that the defendant failed to pay the tax and that he grew and possessed the marijuana subject to the tax); *State v. Klein,* 702 N.E.2d 771 (Ind.App.1998), *trans. denied,* (holding that civil forfeiture of defendant's car constituted punishment for criminal confinement and attempted rape committed in car, and barred defen-

dant's subsequent prosecution for those crimes). The United States Supreme Court clarified the application of federal double jeopardy principles [5] in such cases in *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). The court in *Hudson* confirmed that individuals may be subjected to constitutional "jeopardy" in ostensibly civil proceedings only when those proceedings are intended by the legislature to result in penalties that are essentially criminal in nature, because "[t]he clause protects only against the imposition of multiple *criminal* punishments for the same offense ... and then only when such occurs in successive proceedings." *Id.* at 99, 118 S.Ct. 488 (citations omitted).

■ According to *Hudson,* to determine whether the legislature intended the penalty to be a civil sanction or criminal punishment, a reviewing court must first look to the face of the statute giving rise to the penalty in question. *Id.* Even if the terms of the statute indicate that the legislature did not intend to impose a criminal sanction, a court should determine "whether the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Id.* (internal quotations, citations, and alterations omitted). The court in *Hudson* outlined the following "useful guideposts" for making this determination:

(1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of

---

**5.** Neither party suggests that our analysis of whether Wilcox was subjected to "jeopardy" by virtue of the bond revocation proceedings should be different under the Indiana or federal constitutions. We will accordingly employ existing federal decisional law to address

this issue of first impression. *See State v. Hurst,* 688 N.E.2d 402, 403 at n. 1 (Ind.1997) (applying established federal double jeopardy law to resolve issue under both federal and Indiana constitutions when no cogent argument presented for differing analysis).

scienter"; (4) "whether its operation will promote the traditional aims of punishment—retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable to it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."

*Id.* (quoting *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)). The court explained that these factors should be considered as they relate to the face· of the statute, as opposed to the statute's effect on a single individual, and cautioned that a legislature's apparent attempt to impose a civil sanction should be rejected in favor of a conclusion that the proceeding actually results in a criminal penalty only in the face of " 'the clearest proof.' " *Id.* at 100, 118 S.Ct. 488 (quoting *Kennedy,* 372 U.S. at 169, 83 S.Ct. 554).

### 3. Did Revocation of Wilcox's Bail Constitute Jeopardy?

■ Applying the *Hudson* analysis to this case, we are convinced that the trial court's temporary revocation of Wilcox's bond was not a criminal punishment and did not amount to jeopardy.

#### a. Legislative Intent—Criminal or Civil?

First, there is no indication from the face of the bail revocation statute that the General Assembly intended for the revocation of a defendant's bond to constitute a criminal punishment. "The purpose of a criminal statute is to prevent and punish the commission of crimes." *Dean v. State ex rel. Board of Medical Registration and Examination,* 116 N.E.2d 503, 505, 233 Ind. 25 (1954). This is clearly not the purpose of the statute in question here.

The bail revocation statute provides as follows:

(d) The court may revoke bail or an order for release on personal recognizance upon clear and convincing proof by the state that:

(1) while admitted to bail the defendant:

(A) or his agent threatened or intimidated a victim, prospective witnesses, or jurors concerning the pending criminal proceeding or any other matter;

(B) or his agent attempted to conceal or destroy evidence relating to the pending criminal proceeding;

(C) violated any condition of his current release order;

(D) failed to appear before the court as ordered at any critical stage of the proceedings; or

(E) committed a felony or a Class A misdemeanor that demonstrates instability and a disdain for the court's authority to bring him to trial;

(2) the factors described in IC 33–14–10–6(1)(A) and IC 33–14–10–6(1)(B) [now repealed] exist or that the defendant otherwise poses a risk to the physical safety of another person or the community; or

(3) a combination of the factors described in subdivisions (1) and (2) exists.

IND.CODE § 35–33–8–5(d). The aim of the bail revocation statute is not crime prevention and punishment, but rather determining whether it is appropriate to permit a defendant to remain free on bond. While it appears that bail may be revoked for conduct that may also amount to the violation of a criminal statute, the statute is not designed to obtain convictions for such offenses. Rather, the terms of the statute are aimed toward the civil goals of main-

taining the integrity of the judicial process and the authority of the courts, and protecting the public from potentially dangerous persons.

Moreover, the statute does not impose the traditional "beyond a reasonable doubt" standard governing criminal proceedings. Instead, the "clear and convincing" standard is used. The "clear and convincing" standard is a creature of noncriminal proceedings. *See, e.g., Journal–Gazette Co. v. Bandido's, Inc.,* 712 N.E.2d 446, 456 (Ind.1999) (actual malice in defamation cases); *Estate of Reasor v. Putnam County,* 635 N.E.2d 153, 158–158 (Ind.1994) (reformation of contracts); *Bud Wolf Chevrolet, Inc. v. Robertson,* 519 N.E.2d 135, 137 (Ind.1988) (punitive damages); *In re B.D.J.,* 728 N.E.2d 195, 201 (Ind.Ct.App.2000) (termination of parental rights); *Matter of Commitment of Gerke,* 696 N.E.2d 416, 418 (Ind.Ct.App.1998) (involuntary civil commitment). The legislature's imposition of this civil standard of proof is strong evidence that bail revocation was not intended to be a criminal sanction. *See Shumate v. State,* 718 N.E.2d 1133, 1134–1135 (Ind.Ct.App.1999) (noting that probation revocation proceedings are not criminal proceedings because violations must be proven by the civil preponderance standard). Thus, we cannot say from looking to the face of the statute that the legislature intended to make the revocation of bail a criminal penalty.

### b. Criminally Punitive in Form or Effect?

Moreover, looking to the *Mendoza–Martinez* factors set out in *Hudson,* we cannot conclude that what the legislature apparently intended as a civil remedy is in actuality a criminal penalty. First, while revocation of bail necessarily results in a defendant's involuntary detention, the most basic kind of affirmative restraint, the United States Supreme Court has recognized that "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." *United States v. Salerno,* 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Rather, the fact of detention should be considered along with the other *Mendoza–Martinez* factors to determine whether the pre-trial confinement amounts to constitutional "punishment." *See Bell v. Wolfish,* 441 U.S. 520, 535–539, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (applying *Mendoza–Martinez* factors to determine whether restrictions attendant to pre-trial confinement constituted unconstitutional pre-conviction punishment).

■ Further, there appears to be no basis upon which to conclude that revocation of bail for reasons such as those set forth in Indiana's statute has historically been regarded as a criminal punishment. The purpose of bail, the availability of which is guaranteed for all offenses but murder and treason by Article 1, section 17 of the Indiana Constitution, is "to insure 'the presence of the accused when required without the hardship of incarceration before guilt has been proved and while the presumption of innocence is to be given effect.' " *Hobbs v. Lindsey,* 162 N.E.2d 85, 88, 240 Ind. 74 (1959) (quoting *United States ex rel. Rubinstein v. Mulcahy,* 155 F.2d 1002, 1004 (2nd Cir.1946)). Although the right to bail in most cases is secured by the Indiana Constitution, the legislature, as noted above, has seen fit to provide for its revocation upon the finding of certain circumstances pertaining to the integrity of the judicial process and the authority of the courts, and protecting the public from potentially dangerous persons. *See* IND.CODE § 35–33–8–5. Of the cases that have addressed the revocation of bail generally, none have discussed the constitutionality of the procedure under Article

1, section 17, and none identify bail revocation as a form of unconstitutional pre-trial punishment.[6] *See Perkins v. State,* 694 N.E.2d 292, 293–294 (Ind.Ct.App.1998); *Ray v. State,* 679 N.E.2d 1364, 1366 (Ind. Ct.App.1997). Rather, the cases appear to assume that the procedure amounts to an appropriate non-punitive vehicle to further the interests embodied in the revocation factors. *See id.* This is consistent with cases from other jurisdictions that ostensibly treat the revocation of bail as regulatory and not punitive. *See Salerno,* 481 U.S. 739 at 747, 107 S.Ct. 2095 (holding that pre-trial detention under federal bail statute was regulatory and did not constitute punishment); *United States v. Grisanti,* 4 F.3d 173, 175 (2d Cir.1993) (pre-trial detention upon revocation of bail for violation of conditions of release not punishment); *Dorsey v. Commonwealth,* 32 Va.App. 154, 526 S.E.2d 787, 791–792 (2000) (revocation of bail on basis of finding that defendant presented danger to community was public safety regulation and not punishment).

Additionally, as our supreme court has noted, " '[t]he existence of a scienter requirement is customarily an important element in distinguishing criminal from civil statutes,' " *Hurst,* 688 N.E.2d at 406 (quoting *Kansas v. Hendricks,* 521 U.S. 346, 362, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)), because if a sanction "is not linked to a showing of *mens rea,* it is less likely to be intended as a punishment." *Id.* at 406. Here, revocation of bail under the statute does not require a finding of scienter.

 Moreover, it is reasonable to suspect that the threat of bail revocation may serve as a deterrent to the kinds of behavior identified in the statute, some of which may also constitute crimes. This of course is a traditional goal of criminal punishment. Nevertheless, the mere existence of a deterrent purpose "is insufficient to render a sanction criminal, as deterrence 'may serve civil as well as criminal goals.' " *Hudson,* 522 U.S. at 105, 118 S.Ct. 488 (*quoting United States v. Ursery,* 518 U.S. 267, 292, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996)). *See also Hurst,* 688 N.E.2d at 406 (noting that deterrent effects of civil fine do not render sanction punitive). As the Supreme Court recognized in *Hudson,* "all civil penalties have some deterrent effect." *Hudson,* 522 U.S. at 102, 118 S.Ct. 488. Moreover, the fact that conduct subject to civil remedies may also violate the criminal law does not render the civil sanctions applicable to that conduct criminally punitive. *Id.* at 105, 118 S.Ct. 488. In the case at hand, the bail revocation statute, while perhaps serving as a deterrent to activity that may be criminal, plainly serves important alternative non-punitive purposes such as maintaining the integrity of the judicial process and the authority of the courts, and protecting the public from potentially dangerous persons. The revocation of bail does not on its face appear to be excessive in relation to these valid alternative purposes.

In sum, we conclude that the General Assembly intended bail revocation to constitute a civil sanction, and we have not found the "clearest proof" that the sanction is so punitive in purpose or effect that the sanction is in reality criminal punishment. Thus, Wilcox was not put in constitutional jeopardy as a result of the bail revocation proceedings, and her pending prosecution for the conduct giving rise to

---

6. As noted above, Wilcox never appealed the revocation of her bail, and does not claim that revocation violated Article 1, section 17 of the Indiana Constitution, or that it otherwise constituted impermissible pre-trial punishment.

the revocation of her bail is not barred by double jeopardy principles.

Affirmed.

BAKER and MATHIAS, JJ., concur.

**J.B., Appellant–Defendant,**